NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GUY M. MAGNUSSON,

    Plaintiff,

v.

THE HARTFORD, *et al.*,

    Defendants.

Civ. No. 05-365 (GEB)

**MEMORANDUM OPINION**

**BROWN, Chief Judge**

    This matter comes before the Court upon the motion of defendants Hartford Underwriters Insurance Company and Charles Sheehy (referred to collectively as "Defendants") for summary judgment of the Complaint filed by plaintiff Guy M. Magnusson ("Plaintiff"). Defendants' motion was filed on January 31, 2006. This action was reassigned to the undersigned on August 23, 2006. The Court has reviewed and fully considered the parties' submissions and has decided the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion is granted.

**I. BACKGROUND**

    Plaintiff was employed by defendant The Hartford as a trial attorney in 1987 in its Roseland, New Jersey office. On August 2, 2002, defendant Sheehy became the Regional Director of Counsel for the Mid-Atlantic Region, and on or about September 26, 2002, New Jersey became part of the Mid-Atlantic Region. One of Plaintiff's internal clients was the

Rockaway Claims Department. On November 25, 2002, a conference call took place involving Plaintiff, defendant Sheehy, Rockaway claims supervisor Angelo Consolazio, and other individuals regarding certain Rockaway claims and Rockaway's dissatisfaction about Plaintiff's handling of them. At the conclusion of the conference call (Plaintiff alleges that he thought the call had been terminated), it is undisputed that Plaintiff said "F*** you, motherf***** [expletives redacted]." Consolazio heard the comment and believed it to be directed towards him. Sheehy, asserting that Plaintiff's conduct fell within exceptions to The Hartford's progressive discipline policy, decided to terminate Plaintiff's employment. Subsequently, on December 13, 2002, Plaintiff was terminated from his position as trial attorney with The Hartford.

On or about December 9, 2004, Plaintiff filed his Complaint against Sheehy, The Hartford, and affiliated Hartford entities in the Superior Court of New Jersey, alleging claims under the New Jersey Law Against Discrimination; breach of The Hartford's internal policies, personnel manuals, and handbooks in violation of New Jersey common law; and breach of the covenant of good faith and fair dealing in violation of New Jersey common law. On or about January 20, 2005, Defendants removed the action to this Court based on diversity jurisdiction and filed their Answer on or about February 3, 2005. Following conclusion of discovery on November 28, 2005, Defendants filed the instant motion for summary judgment on January 31, 2006.

## II. DISCUSSION

    A.  Standard for a Motion for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

    Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof

3

on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. See Celotex, 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a

genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted). However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." Id. (citation omitted).

    B.  Plaintiff Fails to Satisfy his Burden on Age Discrimination Claim

Plaintiff's Complaint alleged a claim of discrimination on the basis of age under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 to -49 ("NJLAD"). The Third Circuit has recognized that the New Jersey Supreme Court, "[i]n the absence of divergent language between the NJLAD and federal discrimination laws, . . . has applied federal standards in NJLAD cases 'in the interest of achieving a degree of uniformity in the discrimination laws.'" Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir.)(citations omitted), cert. denied, 543 U.S. 814 (2004). Consequently, the Court will apply the McDonnell Douglas burden shifting analysis to Plaintiff's claims. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003)(citations omitted), cert. denied sub nom. Sarullo v. Potter, 541 U.S. 1064 (2004).

Plaintiff must first prove a prima facie case of discrimination by a preponderance of evidence. See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)(quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). To make a prima facie case here, Plaintiff must prove i) that he belongs to a protected class; ii) that he was qualified for the position; iii) that despite his qualifications he was terminated; and iv) that under circumstances raising an inference of discrimination, the employer continued to seek out individuals with qualifications similar to Plaintiff's to fill the position. See Sarullo, 352 F.3d at 797 (citing McDonnell Douglas, 411 U.S. at 802 and Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 348 n.1 (3d Cir. 1999)); see also Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 281-82 (3d Cir. 2001).

Once established, Plaintiff's prima facie case creates a rebuttable presumption of discriminatory intent. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Burdine, 450 U.S. at 254. While the ultimate burden of proof always remains with Plaintiff, the burden of production now shifts to Defendants, who must articulate a legitimate, nondiscriminatory reason for their actions. See Hicks, 509 U.S. at 507; Burdine, 450 U.S. at 253. To satisfy their burden, they must come forward with admissible evidence supporting the nondiscriminatory reason or reasons for their actions. See Burdine, 450 U.S. at 255. "The McDonnell Douglas formula is grounded in the presumption that if a rational reason for disparate treatment is not forthcoming, it is more likely than not that illegal discrimination played a role in the [adverse] decision." Chauhan v. M. Alfieri Co., 897 F.2d 123, 127 (3d Cir. 1990)(citations omitted). Once Defendants and the named individuals satisfy their burden, the presumption of discriminatory intent is rebutted and drops from the case. See id.

The burden of production then shifts back to Plaintiff, who must come forward with admissible evidence showing that the articulated nondiscriminatory reasons were not the true reasons for the adverse action, but merely a "pretext for discrimination." McDonnell Douglas, 411 U.S. at 804; Hicks, 509 U.S. at 507-08; Burdine, 450 U.S. at 253. "[A] plaintiff does not need direct evidence of pretext in order to survive summary judgment." Chauhan, 897 F.2d at 127 (citing Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir.), cert. dismissed, 483 U.S. 1052 (1987)). "Instead, a plaintiff needs to be able to 'point[] to evidence which calls into question the defendant's intent.'" Id. (quoting Chipollini, 814 F.2d at 899). "In sum, the plaintiff cannot rely solely on a potential finding that the defendant's explanation is implausible. The fact that a judge or a jury might disbelieve the defendant's asserted nondiscriminatory reason is not enough, by itself, to preclude summary judgment. Rather, the plaintiff must be able to adduce evidence, whether direct or circumstantial, from which a reasonable jury could conclude that the defendant's explanation is incredible." Id. at 128 (citation omitted).

Here, Defendants challenge Plaintiff's prima facie case only with respect to the second and fourth prongs and the Court's analysis is therefore confined to these prongs. First, with respect to the second prong, Defendants assert that Plaintiff failed to perform his job at a level that met The Hartford's legitimate expectations. (Defs.' Br. at 8.) However, that is not the standard as set forth above, despite the reference to similar language in Defendants' cited authority. See Williams v. Pemberton Twp. Sch., 323 N.J. Super. 490, 499 (N.J. Super. Ct. App. Div. 1999)(quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979)). Instead, the focus remains on Plaintiff's qualifications for the position. See Sarullo, 352 F.3d at 798 n.8 (noting that past disciplinary actions against employee do not lead to the inference that he was

unqualified for his position).  The Court finds that Plaintiff has provided sufficient evidence that he was qualified for the position and that the second prong has been satisfied.

Next, with respect to the fourth prong, Defendants again set forth a different phrasing of the requirements, which might be attributable to the malleable nature of the prong, as they have noted.  Nonetheless, the Court follows the language set forth above and finds that Plaintiff has satisfied the fourth prong by presenting evidence and affidavit testimony supporting his contention that The Hartford attempted to hire a replacement attorney with potentially less experience than Plaintiff.  (See Pl.'s Br. at 17; Affidavit of Darlene P. Butler, Esq., at ¶ 22.)

Having found that Plaintiff has presented a prima facie case of discrimination, and with the ultimate burden of proof still remaining with Plaintiff, the burden of production now shifts to Defendants to articulate a legitimate, nondiscriminatory reason for their actions.  To that end, Defendants have asserted in their moving brief and Local Rule 56.1 Statement that Plaintiff was terminated due to his work performance, which included his conduct at the conclusion of the November 25, 2002 conference call.  Consequently, it is then Plaintiff's burden to show that this was merely pretext for discrimination.  However, the Court concludes that Plaintiff's claim fails here.

Plaintiff has not presented evidence demonstrating that Defendants' stated reasons for Plaintiff's termination were merely pretext for discrimination.  His conduct at the close of the conference call is uncontested and Plaintiff focuses on defendant Sheehy's criticisms of Plaintiff's work as part of his alleged attempt to rid the office of "older, more experienced attorneys" that left Plaintiff fearful for his job.  Plaintiff further cites other alleged instances of employees using profanity but not being terminated, yet does not appear to cite any factual

situation similar to his where an employee's use of profanity was overheard by a client. Consequently, Plaintiff has not demonstrated that Defendants' stated nondiscriminatory reason for terminating him was based on anything other than his conduct. Furthermore, as Defendants note, they are not precluded from "discrimin[ating] among individuals on the basis of competence, performance, conduct or any other reasonable standards." Viscik v. Fowler Equip. Co., 173 N.J. 1, 13 (2002)(citation omitted). The Court concludes that there are no genuine issues of material fact and that the evidence demonstrates that Defendants terminated Plaintiff based upon his conduct and not in a discriminatory manner prohibited by NJLAD. Consequently, Defendants' motion for summary judgment is granted with respect to Plaintiff's claims under NJLAD.

  C. Plaintiff Could Not Have had Reasonable Expectations of an Implied Contract

  Next, Plaintiff claimed, in several counts, that Plaintiff's termination violated the disciplinary policy and implied employment contract between Plaintiff and Defendants. Defendants noted Plaintiff's deposition testimony wherein Plaintiff stated that he did not have an employment contract, but merely believed that certain policies would be followed. (See Pl.'s June 7, 2005 Deposition at 229-30, Certification of David I. Rosen at Exhibit A.)

  Plaintiff relied on Woolley v. Hoffman-LaRoche, Inc., 99 N.J. 284 (1985), modified on other grounds, 101 N.J. 10 (1985), Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385 (1994), and Nicosia v. Wakefern Food Corp., 136 N.J. 401 (1994), wherein the New Jersey Supreme Court recognized that the reasonable expectations of employees based upon an employee handbook could create an implied employment contract. However, as Defendants note, Woolley, which the later cases relied upon, concluded with the Court's express recommendation that if an

9

employer "does not want the manual to be capable of being construed by the court as a binding contract," the employer should include "in a very prominent position . . . an appropriate statement that there is no promise of any kind by the employer contained in the manual; . . . and that the employer continues to have the absolute power to fire anyone with or without good cause."  Woolley, 99 N.J. at 309.  The Court further required that disclaimers be "set off in such a way as to bring the disclaimer to the attention of the reader."  Nicosia, 136 N.J. at 415 (citing Woolley, 99 N.J. at 309).

      Here, Defendants cite to the disciplinary policy available on their website, which Plaintiff concedes as being "widely distributed," where, under the section entitled "Termination Process and Information," there is a section prominently set off entitled "Disclaimer" that states, in pertinent part, that "[t]he policies, practices, and benefits described here are subject to termination, modification, revocation, or change, in whole or in part, from time to time, with or without prior notice, at any time, at the Company's sole discretion."  (Rosen Certification, Exhibit D at 26.)

      Defendants then cite to the first paragraph of The Hartford's Progressive Discipline Policy on their website, which states that "both the employee and The Hartford have the right to terminate employment at will, with or without cause or advance notice, [and] The Hartford may use progressive discipline at its discretion."  (Rosen Certification, Exhibit D at 44.)  Later, under a bold heading labeled "Disclaimer," the Progressive Discipline policy states that "[e]ach situation is different and will be handled based on the details of the specific case" and that "[t]here may be situations where the use of progressive discipline is inappropriate, unwarranted or unnecessary."  (Id. at 54.)  Further, this disclaimer states that

> The guidelines are meant primarily for handling issues with poor attendance, chronic tardiness, and/or work performance deficiencies, as well as some behavioral issues. They do not, in any way, create or establish a contractual right or guarantee between any employee and The Hartford. Management, in consultation with HR and other units, as needed, retains the right in its sole discretion to determine the Company's response to any employment matter. For example, serious behavioral violations can result in immediate termination. When performance issues or behavioral problems arise, managers should consult their human resources representative for assistance.

(Id.)

The Court concludes that the language contained in these passages satisfies the recommendation enunciated by the New Jersey Supreme Court in Woolley and sufficiently counters Plaintiff's "reasonable expectations" of an implied contract while making it clear that the employment relationship was at-will with a discretionary progressive discipline policy. Consequently, Defendants' motion for summary judgment is granted with respect to Plaintiff's claims of breach of the implied contract and of Defendants' internal policies.

### D. The Implied Covenant of Good Faith and Fair Dealing Does Not Exist in At-Will Employment Relationships

Finally, Plaintiff's Complaint contained a claim of the breach of the implied covenant of good faith and fair dealing by virtue of terminating him allegedly in contravention of the terms of their employment agreement. However, as Defendants set forth, absent an express or implied employment contract, there is no implied covenant of good faith and fair dealing and thus there can be no breach. Wade v. Kessler Inst., 172 N.J. 327, 345 (2002); DeJoy v. Comcast Cable Comm'ns, Inc., 968 F. Supp. 963, 989 (D.N.J. 1997). Accordingly, pursuant to the Court's finding above with respect to Plaintiff's at-will employment, there is no implied covenant of good faith and fair dealing here and Defendants' motion for summary judgment is granted with respect to this claim.

Consequently, having determined that no genuine issues of material fact exist to preclude a determination as a matter of law that Defendants did not unlawfully discriminate against Plaintiff on the basis of his age, violate an implied employment contract, or breach the implied covenant of good faith and fair dealing, Defendants' motion for summary judgment is granted.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and the case shall be marked closed. An appropriate form of order accompanies this Memorandum Opinion.

Dated: August 30, 2006

                                              s/ Garrett E. Brown, Jr.
                                              GARRETT E. BROWN, JR., U.S.D.J.